UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
VICTORIA MEDER,

                 Plaintiff,                       MEMORANDUM
                                            AND ORDER____

          -against-
                                        06-CV-504 (JG) (VVP)

THE CITY OF NEW YORK and the
NEW YORK CITY DEPARTMENT
OF EDUCATION,

                 Defendants.
--------------------------------------------------------x
A P P E A R A N C E S :

       LAW OFFICE OF ANTHONY D. DENARO, P.C.
              62 Nichols Court, Suite 200
              Hempstead, NY 11550
       By:    Anthony D. Denaro
              Attorney for Plaintiff

       LAW OFFICES OF LOUIS D. STOBER, JR., LLC
              350 Old Country Road, Suite 205
              Garden City, NY 11530
       By:    Louis D. Stober, Jr.
               Attorney for Plaintiff

       MICHAEL A. CARDOZO
              Corporation Counsel of the City of New York
              100 Church Street
              New York, NY 10007
       By:    Diana Goell Voigt
               Jonathan Bardavid
               Attorney for Defendants

JOHN GLEESON, United States District Judge:

         Plaintiff Victoria Meder, a former public school teacher, is suing the City of New

York and the New York City Department of Education ("DOE"), alleging that she was subject to

age discrimination during her tenure at P.S. 79 in Queens for the 2004-2005 academic year.  She

1

alleges that principal Joel Schuckman, assistant principal Frances Walters, special education teacher Stephanie Lardizzone, and literacy coach Susan Zweroff engaged in an extended course of discriminatory and retaliatory conduct involving excessive monitoring; unjustified reprimands; fabrication of parent and student complaints; undesirable teaching assignments and transfers; a required mental health examination; and imposition of a disciplinary bar to re-employment upon Meder's retirement. Meder claims that this conduct constituted age discrimination and retaliation for prior lawsuits, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, and the parallel provisions of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290-301.[1] The defendants move for summary judgment on all counts. For the reasons stated below, the motion is granted in part and denied in part.

BACKGROUND[2]

Victoria Meder, born in 1939, was a teacher in the New York City school system for approximately 17 years. In 2002, she filed a lawsuit in this district against the New York City Board of Education alleging age discrimination while she was working at P.S. 108 in Queens during the 2000-2001 school year. The defendant's motion for summary judgment was granted, and the dismissal of the case was affirmed on appeal. *Meder v. Bd. of Educ.* (*Meder I*), 135 Fed. App'x 467 (2d Cir. 2005). In 2005, Meder sued the DOE, alleging that she was subject to age discrimination and retaliation for *Meder I* while she was working at P.S. 220 in Queens.

---

[1]     The analysis of Meder's claims pursuant to the NYSHRL parallels the analysis of her federal claims. *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). Meder characterizes her retaliation claim as one under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17. As Title VII has no application to retaliation for lawsuits alleging age discrimination, 42 U.S.C. § 2000e-3(a), I construe her retaliation claim as arising under the ADEA's anti-retaliation provision, 29 U.S.C. § 623(d).

[2]     Unless noted otherwise, these facts are not in dispute.

Again, the defendants' motion for summary judgment was granted. *Meder v. City of N.Y.* (*Meder II*), No. 05 CV 919 (JG), 2007 WL 1231626, at *1 (E.D.N.Y. Apr. 27, 2007).

Meder was transferred to P.S. 79 pursuant to the United Federation of Teachers' ("UFT") transfer plan, with her tenure at P.S. 79 to commence in September of 2004. Meder alleges that while she was on vacation during the summer of 2004, she received numerous telephone calls to her home from Joel Schuckman, the principal of P.S. 79.

Schuckman and Meder met in August and Schuckman told Meder that she would be assigned to an inclusion class[3] cooperatively taught with special education teacher Stephanie Lardizzone. Schuckman allegedly asked if Meder was able to handle the work, which he characterized as very demanding, and Meder said she was. Meder Dep. 36, 38. Schuckman allegedly told Meder that the inclusion class was the only opening, but Meder contends that assistant principal Frances Walters later told her that there had been other openings she could have applied for. *Id.* at 39-40. Assignment to the inclusion class did not affect Meder's salary. Meder alleges that she later learned that assignments to inclusion classes are generally given to junior teachers, and as a senior teacher she had a right to "bump" a more junior teacher and thereby obtain a different assignment by filing a grievance. Meder did not file a grievance regarding this assignment, as she alleges she did not know that she could do so until it was too late. *Id.* at 41-43.

Meder alleges that she was called into Schuckman's office over the loudspeaker on September 9, 2004, Meder's second day of work and before students had arrived. *Id.* at 57.

---

[3]     An inclusion class consists of both special education and general education students, and is taught cooperatively by a general education teacher and a special education teacher. The goal of an inclusion class is to enable the special education students to be placed in a regular education class the following year.

She claims that when she arrived, she was warned that she would face adverse consequences unless she followed the mini-lessons[4] as written. *Id.* Meder alleges that this warning surprised her because she had previously indicated that she was willing to follow these lessons. *Id.* During the previous school year Meder had received a negative classroom evaluation in connection with a mini-lesson. Defendants allege the evaluation was negative because she failed to follow the mini-lesson, which Meder disputes. *Id.* at 57-58. Meder also claims that assistant principal Walters repeated Shuckman's warning to Meder in the hallway later that day. Additionally, Meder alleges that at one point she had a discussion with Walters about the inclusion class and Meder referred to her own age in order to convey that she was mature. When Meder said that she was an older teacher, Walters allegedly said "Oh, really now" in a tone that conveyed a message to Meder that her age was a problem. *Id.* at 62. Meder further alleges that Schuckman would talk about the fact that Meder had initiated a lawsuit on several occasions, and also that she heard Walters, who was having a discussion with a third party in the school's general office, loudly say "some teachers are blackballed" and glance in Meder's direction, which Meder took to refer to her prior lawsuit. *Id.* at 64-65.

Meder and Lardizzone's relationship as co-teachers was rocky from the start. Meder alleges that Lardizzone interfered with Meder's teaching, failing to coordinate lesson plans and often giving contradictory instructions while Meder was teaching a lesson. Meder also alleges that her property would disappear from the classroom and reappear days later in strange places, and that Lardizzone moved and destroyed her property to antagonize her. Meder alleges that Lardizzone goaded parents to make complaints about Meder, and that Lardizzone wrote

---

[4]     Mini-lessons are prescribed lesson plans that teachers are required to follow. They were introduced during the 2003-2004 school year.

complaints about Meder in which she falsified facts regarding Meder's behavior. Id. at 77, 81-83.

Meder complained to Schuckman several times about Lardizzone, alleging that Lardizzone yelled at the children. Around this time, Lardizzone also complained to Schuckman, asserting that Meder yelled at Lardizzone in front of the students and parents and spoke abusively toward the students. Schuckman credited Lardizzone's account of events. Schuckman had a meeting with Meder, Lardizzone, and a UFT representative in order to resolve their dispute. Meder alleges that Schuckman did not allow Meder to speak and threatened her with discipline and unsatisfactory ratings, causing Meder to leave the meeting crying and to say she might have to get legal representation due to her unfair treatment. Meder Decl. ¶ 11. Meder also alleges that Lardizzone apologized and her relationship with Meder improved for a period of time. Meder Dep. 81.

Meder alleges that she was not provided with required teaching manuals early in the school year, that she was the only teacher without the manuals, and that she borrowed manuals from Lardizzone until she eventually received the manuals after several requests. *Id.* at 66-72. On December 10, 2004, Schuckman formally evaluated a literacy lesson given by Meder, and on December 16, 2004 he rated the lesson unsatisfactory. Meder alleges that this was a false, discriminatory and retaliatory rating. Meder filed a grievance objecting to the evaluation, which was denied. Meder then wrote a letter through her counsel at the time to regional superintendent Judith Chin, making the complaints described above but characterizing it as harassment and not mentioning age discrimination or retaliation.

The defendants allege that Schuckman received several letters from parents complaining that Meder shouted at children or Lardizzone; that Lardizzone informed Schuckman of several incidents of Meder being verbally abusive in class and on one occasion throwing a student's project in the garbage; and that an intern assigned to Meder's classroom reported that Meder was ill-tempered and unprepared. Bardavid Decl. Ex. L. Meder contends that the letters and other reports are fabrications, noting that Schuckman did not conduct a contemporaneous investigation into them. *E.g.*, Meder Dep. 82-84, 91-92, 101-07, 110-11; Meder Decl. ¶¶ 15-18. In addition to first-person reports, Lardizzone elicited reports of incidents from two of Meder's students, which she memorialized in question-and-answer form. Bardavid Decl. Ex. L. In each of these dialogues, the student related, under questioning from Lardizzone, an unpleasant classroom interaction between Meder and the student. Arguing that Lardizzone falsified these dialogues, Meder offers handwritten and illustrated letters of appreciation from the two students in question. Meder Decl. ¶¶ 15-17; Stober Decl. Ex. D.

Schuckman met with Meder and on March 10, 2005 wrote a letter regarding these various third-party complaints. Meder filed a grievance over this letter, which was denied on March 13, 2005, but Meder alleges that the matter went to arbitration, as a result of which Schuckman was required to remove all third-party complaints from her files. Meder Dep. 93. The record does not include any document verifying that arbitration proceedings took place or what their outcome was, but Meder submits as evidence two versions of a letter from Schuckman, both dated March 10, 2005. One of these versions includes reports of third-party complaints, and one does not. Stober Decl. Ex. G. Meder alleges that the latter was redrafted after arbitration. Meder Decl. ¶ 20.

The defendants allege that Schuckman observed Meder continue to be hostile and disrespectful to Lardizzone and her students. On April 7, 2005, Schuckman transferred Meder out of the inclusion class with Lardizzone and into an Academic Intervention Services ("AIS") class[5] with the same salary and benefits. Meder claims that she had previously asked Schuckman to transfer her out of the classroom with Lardizzone, but when she accepted the transfer, she did not know that the AIS class was an even worse assignment, one that no other teacher wanted. Meder Decl. ¶ 2; Meder Dep. 159-65. Meder alleges that Schuckman forced her to meet with other teachers during her preparation periods and that she had to prepare for six classes instead of her contractual maximum of five. Meder Decl. ¶ 21. She was assigned to meet with the literacy coach,[6] who Meder alleges was abusive and demeaning toward her. Id. ¶ 22.

After several weeks of Meder teaching the AIS class, with Schuckman observing at times, Meder was removed from the class. Instead of being placed in a new class (Meder alleges there was a permanent classroom available, Meder Dep. 177), she was given daily teaching assignments, at the same salary and benefits. Schuckman told her in a letter that he was assigning Meder to be a permanent substitute teacher for the remainder of the school year. Stober Decl. Ex. M, Meder Decl. ¶ 25. Meder alleged that at a meeting on May 4, 2005, Schuckman shouted at her, mentioned her prior lawsuit, and said he was dissolving the AIS class, demoting her to a permanent substitute, and giving her an unsatisfactory rating. Meder Decl. ¶ 25.

---

[5] The AIS class was composed of 5th graders and 6th graders who needed extra assistance in order to qualify for promotion into the next grade.

[6] The function of a literacy coach is to provide teachers with extra assistance in preparing to teach literacy classes.

Meder filed a grievance regarding the daily assignments, and at a grievance conference on May 24, 2005 she was offered the opportunity to serve as gym teacher. She initially accepted this assignment, but then declined it after several days. At a second-step grievance conference on June 16, 2005, Meder and the administration reached a settlement where the administration agreed not to refer to her as a "substitute" teacher at the school, to remove a letter from Meder's file (Meder alleges it was the one referring to her as a permanent substitute, Stober Decl. Ex. M), and to assign her to a full-time teaching position, which she promised to accept. Meder alleges that the agreement called for Schuckman to put Meder in a classroom, and also alleges that a classroom position was available. Meder Decl. ¶ 26. Despite this agreement, Schuckman continued to give Meder daily assignments for the rest of the year instead of a permanent classroom position. Defendants allege that it would have been too disruptive to create a class or to have Meder work with another teacher that late in the year. Schuckman Decl. ¶ 44.

On May 8, 2005, Schuckman requested that Meder undergo a medical examination, which Meder says was "exclusively a psychological evaluation to determine mental fitness and or dementia." Meder Decl. ¶ 28; *see also* Bardavid Decl. Ex. R (ordering medical examination for irrational behavior). Meder was tested on May 27, 2005 and found fit for duty. Schuckman gave Meder an unsatisfactory annual performance rating for 2004-2005. Meder alleges that Schuckman and Lardizzone both falsely referred to her as forgetful and confused. Meder Decl. ¶ 21; Meder Dep. 76-77.

Schuckman assigned Meder to a third grade general education class for the 2005-2006 school year. Meder had requested third grade, but it was her third and last choice.

Meder's assigned class was in a portable unit away from the main building, and Zweroff was also assigned to the portable unit. Lardizzone was assigned to teach at the third grade level, but she was not sharing a classroom with Meder. Meder resigned on September 6, 2005, and received a letter dated September 26, 2005 informing her that she was on a list of teachers ineligible to be hired due to disciplinary charges. Stober Decl. Ex. B. Meder alleges that she has suffered psychological damage and cannot eat or sleep well due to the pattern of discrimination and retaliation. Meder Decl. ¶ 31. On July 1, 2005, she filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"), which on November 7, 2005 issued her a "right to sue" letter. This complaint followed.[7]

## DISCUSSION

A.     *Summary Judgment Standard of Review*

Under Federal Rule of Civil Procedure 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994) ("[T]he burden is on the moving party to demonstrate that no genuine issue respecting any material fact exists." (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975))). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for

---

[7]     At oral argument on this motion, Meder moved to reopen discovery pursuant to Federal Rule of Civil Procedure 56(f) in order to depose Schuckman. That motion is denied.

the nonmoving party." *Id.* Accordingly, in determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying [facts] must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam), and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586. Instead, "the moving part may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223-24 (citations omitted). Although issues of discriminatory animus are not always resolvable at this stage of litigation, the "'impression that summary judgment is unavailable to defendants in discrimination cases is insupportable.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting *McLee v. Chrysler Corp.*, 38 F.3d 67, 68 (2d Cir. 1994)).

B. *Adverse Employment Actions Constituting Age Discrimination*

1. Burden-Shifting Framework

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The Second Circuit recognizes the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04

(1973), as applicable to a motion for summary judgment on a claim under the ADEA. *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir. 2000) (citing *Fagan v. N.Y. State Elec. & Gas Corp.*, 186 F.3d 127, 132 (2d Cir. 1999)); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) ("[W]e analyze ADEA claims under the same framework as claims brought pursuant to Title VII." (internal quotation omitted)). Under this analysis,

> a plaintiff first bears the "minimal" burden of setting out a prima facie discrimination case, and is then aided by a presumption of discrimination unless the defendant proffers a "legitimate, nondiscriminatory reason" for the adverse employment action, in which event, the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination.

*McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006) (citations omitted).

To establish a prima facie case of discrimination, a plaintiff must produce evidence that she (1) "was within the protected age group," (2) "was qualified for the position," (3) "was subject to an adverse employment action," and (4) that "the adverse action occurred under circumstances giving rise to an inference of discrimination." *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003) (internal quotations omitted). The defendants concede for the purposes of this motion that Meder has satisfied the first and second requirements of the prima facie case, but argue she has failed to meet the third and fourth.

2.     Adverse Employment Actions

An adverse employment action is "a materially adverse change in the terms and conditions of employment," something "more disruptive than a mere inconvenience or an alteration of job responsibilities," such as "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly

diminished material responsibilities, or other indices . . . unique to a particular situation."
*Galabya*, 202 F.3d at 640 (internal quotations omitted).

Many of Meder's allegations do not rise to the level of adverse employment actions. Her claims of excessive monitoring, *see Meder II*, 2007 WL 1231626, at *4 (noting that excessive scrutiny is not an adverse employment action); rude behavior including moving of her personal possessions, *see id.* (noting that being "yelled at" and subject to other rude behaviors did not amount to adverse employment actions (quoting *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y 2005))); failure to receive manuals promptly when she could borrow them from other teachers, *cf. Wells-Williams v. Kingsboro Psychiatric Center*, No. 03-CV-134 (CBA), 2007 WL 1011545, at *3 (E.D.N.Y. Mar. 30, 2007) (failure to receive same knives as other cooks not actionable when plaintiff received adequate knives); and referral for a medical evaluation, *see Bazile v. City of N.Y.*, 215 F. Supp. 2d 354, 385-86 (S.D.N.Y. 2002) (finding referral for psychiatric evaluation not an adverse employment action in absence of evidence of its impact on working conditions), *aff'd*, 64 Fed. Appx. 805 (2d Cir. 2003), do not rise to the level of adverse employment actions. These conditions and the others Meder complains about, even in the aggregate, are not "'so difficult or unpleasant that a reasonable person in [Meder's] shoes would have felt compelled to resign,'" *Terry*, 336 F.3d at 152 (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996)), especially considering that before she resigned in September 2005 she had been assigned to a permanent classroom without a co-teacher for the 2005-2006 school year. Accordingly, Meder was not constructively discharged. *Cf. Petrosino v. Bell Atl.*, 385 F.3d 210, 214, 230 (2d Cir. 2004) (affirming denial of summary

judgment on constructive discharge claim where female employee was repeatedly confronted with extremely crude sexual graffiti).

However, Meder has made allegations that, if proved, would constitute adverse employment actions, and she has provided sufficient evidence to warrant a reasonable jury in concluding that the allegations are true. Specifically, Meder has produced sufficient evidence that her assignment to the AIS class, and then to daily teaching assignments instead of a permanent classroom, constituted materially adverse employment actions.[8] A transfer or assignment is not an adverse employment action if it is "'a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance,'" or if it involves "'no reduction in pay and no more than a minor change in working conditions,'" *Garber v. N.Y. City Police Department*, No. 95 Civ. 2516 (JFK), 1997 WL 525396, at *7 (S.D.N.Y. Aug. 22, 1997) (quoting *Williams v. Bristol-Meyers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)); *see also Morris v. Lindau*, 196 F.3d 102, 113 (2d Cir. 1999) ("To constitute an adverse employment action, a transfer must be accompanied by a negative change in the terms and conditions of employment."), but a transfer may be an adverse personnel action if it moves the employee from a more prestigious to a less prestigious position, *de la Cruz v. N.Y. City Human Res. Admin. Dept. of Soc. Servs.*, 82 F.3d 16, 21 (2d Cir. 1996) (holding transfer to allegedly less prestigious assignment to be adverse employment action), or if it is undertaken in order to harass the

---

[8] Even assuming that Meder's contract did give her the right to bump a junior teacher from the inclusion class (though Meder has provided no nonhearsay evidence to prove this), her initial assignment to the inclusion class does not amount to an adverse action. *See Galabya*, 202 F.3d at 640 (noting that transfer is not adverse unless it is "more disruptive than a mere inconvenience or alteration of job responsibilities" (quotation omitted)).

employee, *see Terry*, 336 F.3d at 144 (finding sufficient evidence to conclude retaliatory transfer intended to "screw" plaintiff was adverse personnel action).

Meder has proffered evidence that no other teacher was willing to accept the assignment of teaching the AIS class and that as part of her transfer to that class she was required to give up preparation and lunch periods in violation of her union contract. *Cf. Castro v. N.Y. City Bd. of Educ. Pers. Dir.*, No. 96 Civ. 6314 (MBM), 1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998) (finding assignment to class with special needs students not adverse when it was done due to the plaintiff's demonstrated expertise with such students and when it did not force the plaintiff "to perform duties outside of her teaching contract"). A reasonable jury could credit this evidence and find her transfer to the AIS class to be an adverse employment action. This is so even though she initially requested a transfer out of the inclusion class and consented to the transfer. *Richardson v. N.Y. State Dep't of Correctional Serv.*, 180 F.3d 426, 444 n.4 (2d Cir. 1999), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006).

Similarly, Meder has produced evidence that being removed from a classroom and being given daily teaching assignments amounted to an adverse employment action. Schuckman referred to this position as a "permanent substitute teacher." Meder has also produced evidence of a grievance settlement in which the administration agreed not to refer to Meder as a substitute and agreed to give her a permanent classroom teaching assignment,[9] and it is undisputed that after the settlement the administration persisted in giving her daily

---

[9] It is undisputed that the parties agreed that the adminsitration would give her a full-time teaching position and she would accept it, *see* Stober Decl. Ex. N; Schuckman Decl. ¶¶ 43-44, but it is unclear whether defendants contend that daily teaching assignments adding up to full-time work, as Meder received, are consistent with this agreement. *See* Schuckman Decl. ¶¶ 43-47.

assignments for the remainder of the school year. Combined with Meder's testimony, this evidence would permit a reasonable jury to conclude that the daily teaching assignments constituted an adverse employment action.

The unjustified criticism and negative evaluations Meder alleges do not constitute adverse employment actions unless they led to a change in the conditions of employment. *See Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 756 (2d Cir 2004) (citing *Weeks v. N.Y. State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108-14 (2002)) (noting that negative evaluations do not constitute adverse employment actions unless they have an effect on the terms and conditions of employment); *see also Meder II*, 2007 WL 1231626, at *4 (finding Meder's complaints of criticism not sufficient to constitute adverse employment actions where the criticism had no effect on Meder's conditions of employment). However, in this case Meder has produced sufficient evidence for a reasonable jury to conclude that the allegedly unjustified criticism led to one or both of Meder's transfers, and thus it might find that those evaluations constituted changes in Meder's conditions of employment.

Additionally, Meder has produced sufficient evidence to allow a reasonable jury to conclude that the imposition of a disciplinary bar against returning to the school system was an adverse employment action. *See* Stober Decl. Ex. B. That this bar was imposed after Meder's retirement on September 6, 2005 does not prevent it from being actionable under the ADEA, which makes it unlawful not merely to discriminate against current employees but also to "fail or refuse to hire" any prospective employee based on age. 29 U.S.C. § 623(a)(1).

3.    Inference of Discrimination

Given that a reasonable jury could find that Meder was subjected to adverse employment actions, Meder will have made out a prima facie case of age discrimination if she can show that the adverse actions "occurred under circumstances giving rise to an inference of discrimination." *Terry*, 336 F.3d at 138 (quotation omitted).  Here, Meder's evidence is circumstantial, which is an accepted form of proof of discrimination.  *See Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998) ("[P]laintiffs in discrimination suits often must rely on the cumulative weight of circumstantial evidence, since '[a]n employer who discriminates is unlikely to leave a "smoking gun," such as a notation in an employee's personnel file, attesting to a discriminatory intent.'"  (quoting *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991))).  Meder alleges that Walters once implied that Meder's age was apparent in conversation, Meder Dep. 62; that Lardizzone and Schuckman both characterized her as "forgetful" and "confused," Meder Decl. ¶ 21; Meder Dep. 76-77; and that she was forced to undergo a dementia test while in the midst of grievance proceedings regarding her work assignments, Meder Decl. ¶ 28.  Even if the comments in isolation might properly be considered "stray remarks," legally insufficient to support a finding of discriminatory animus, when viewed in conjunction with Meder's testimony characterizing her medical examination as a dementia test they provide sufficient evidence for a reasonable jury to conclude that the adverse personnel actions occurred in circumstances supporting an inference of age discrimination.  *See Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) (noting that while "stray remarks" cannot support an inference of discrimination on their own, they "can no longer be deemed 'stray'" if there is other evidence of discrimination).

Defendants argue that the fact that Shuckman is in the same protected class as Meder weakens any inference of age discrimination. Some courts have inferred that it is less likely that a member of a protected group will discriminate against a member of the same group, *see Drummond v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005); *but see Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (rejecting use of inference in age discrimination when supervisor was older than plaintiff). I am not persuaded, however, that the mere fact that Schuckman, who was 8 years younger than Meder, was over 40 would necessarily prevent a reasonable jury from concluding that the adverse employment actions he took were motivated by Meder's age.

Therefore, a reasonable jury could find that Meder has established a prima facie case of age discrimination.

3.    Legitimate Nondiscriminatory Reason and Pretext

The defendants argue that Meder's poor performance was the legitimate nondiscriminatory reason for their actions toward her. The lengthy record of complaints, warnings, and negative evaluations Meder accrued during her year at P.S. 79 is certainly sufficient to shift the burden back to Meder to show this proffered reason is pretextual. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000) (burden to show legitimate nondiscriminatory reason "is one of production, not persuasion; it 'can involve no credibility assessment.'" (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993))).

Meder argues that the record against her is simply fabricated as part of the underlying pattern of discrimination. This claim standing alone is easy to make, and without any supporting evidence it might not be sufficient for a reasonable jury to find the defendant's

proffered reasons pretextual.  *Cf. Morris v. Ales Group USA, Inc.*, No. 04 CV 8239

(PAC)(THK), 2007 WL 1893729, at *8 (S.D.N.Y. June 29, 2007) (granting defendant's motion

for summary judgment when plaintiff's allegations of pretext were "not supported by a single

piece of evidence other than [her] own opinions and conjectures").  However, Meder does have

some evidence which, while equivocal, makes it appropriate for a jury to determine whether or

not the defendants fabricated her disciplinary record as a pretext for discrimination.  Lardizzone

elicited narratives of Meder's poor performance from two students and memorialized them in

written dialogues, and Meder has produced handwritten notes of appreciation from each student

in question.  *Compare* Bardavid Decl. Ex. L *with* Stober Decl. Ex. D.

There are a number of possible reasons why two second grade students might

complain to Lardizzone about Meder's behavior and also provide appreciative notes to Meder.

One is that Lardizzone intentionally embellished or fabricated their complaints in her written

dialogues, and a reasonable jury could draw that conclusion.  If it did, it could then infer that the

defendants' proffered concerns about Meder's teaching ability were also false.  *See Reeves*, 530

U.S. at 148 ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the

employer's asserted justification is false, may permit the trier of fact to conclude that the

employer unlawfully discriminated."); *id.* at 147 (noting that holding "is consistent with the

general principle of evidence law that the factfinder is entitled to consider a party's dishonesty

about a material fact as affirmative evidence of guilt" (citation omitted)).[10]  A reasonable jury

could find further support for such a finding in Meder's allegations that Schuckman did not take

---

[10]     Although *Reeves* concerned the standard for judgment as a matter of law after a jury verdict,
*Reeves*, 530 U.S. at 137, this standard is identical to the standard for summary judgment, *e.g.*, *Schnabel*, 232 F.3d at
89 (quoting *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000)).

the investigative steps that DOE protocol mandated for third-party complaints, and in the evidence that Schuckman took those complaints out of Meder's personnel file. Meder Decl. ¶¶ 15, 20; Stober Decl. Ex. G.

Therefore, since a reasonable jury could conclude that Meder suffered adverse employment actions in circumstances sufficient to support an inference of discrimination, and that the disciplinary record against Meder was fabricated to provide a pretext for discrimination, the defendants are not entitled to summary judgment on Meder's claim under 29 U.S.C. § 623(a)(1) and N.Y. Exec. Law § 296 based on adverse employment actions.

C.      *Hostile Work Environment Constituting Age Discrimination*

Discrimination in the form of a hostile work environment is actionable under the ADEA, and is analyzed under the same framework used for analogous claims under Title VII. *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999). Title VII affords relief where a plaintiff can establish that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations and quotations omitted). Courts look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. The conduct constituting the hostile work environment must (1) be "objectively severe or pervasive," (2) be subjectively "hostile or abusive," and (3) occur because of a protected characteristic. *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001).

I conclude that a reasonable jury could not find that the actions alleged by Meder constituted a hostile work environment sufficient to "alter the conditions" of Meder's employment. *Harris*, 510 U.S. at 21. The bulk of Meder's complaint of a hostile work environment revolves around interactions that she found unpleasant but do not rise to the "objectively severe or pervasive" standard. *Id.*; *see also Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 315 (S.D.N.Y. 2000) (hostility and claims of "false accusations" against plaintiffs insufficient to constitute hostile working environment); *Meder II*, 2007 WL 1231626, at *5 ("[A] hostile work environment is something more than having a difficult or aggressive boss. It is a pervasively toxic environment, necessarily affecting the terms and conditions under which one is employed."). Summary judgment against her on that claim is therefore appropriate.

D.      *Materially Adverse Actions Constituting Retaliation For Prior Lawsuits*

The ADEA makes it unlawful for an employer to "discriminate against any of his employees" because that employee has "made a charge, testified, assisted or participated in any matter in an investigation, proceeding, or litigation under [the ADEA]." 29 U.S.C. § 623(d). A prima facie case for retaliation under the ADEA consists of evidence tending to prove (1) the employee's participation in protected activity with (2) the knowledge of the employer, (3) that the employee suffered a materially adverse action, and (4) a causal connection between the protected activity and the adverse action. *See Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006). If the plaintiff makes out a prima facie case, the burden shifts to the defendant to proffer a legitimate nonretaliatory reason for its conduct, and if this is accomplished it shifts back to the plaintiff to prove pretext, just as in discrimination cases. *See Terry*, 336 F.3d at 141 ("The *McDonnell Douglas* burden-shifting analysis used in claims of

discrimination pursuant to Title VII also applies to retaliation claims brought pursuant to Title VII.  The same standards and burdens apply to claims of retaliation in violation of the ADEA." (citations omitted)).

It is undisputed that Meder has participated in activity protected under 29 U.S.C. § 623(d), and Meder alleges that Schuckman was aware of this activity.  Meder Decl. ¶ 25. Unlike a claim of age discrimination based on an adverse employment action, a claim of retaliation requires only a materially adverse action, one which "'could well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Kessler*, 461 F.3d at 209 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2409 (2006)).  That is, any materially adverse action, not only those that affect the terms and conditions of employment, can be a component of a prima facie case of retaliation.  *See Kessler*, 461 F.3d at 208 ("'[T]he anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'"  (quoting *White*, 126 S. Ct. at 2409)).

In light of this standard, a reasonable jury could conclude that Meder's transfer to the AIS class; her transfer out of the AIS class to daily assignments; the complaints and reprimands leading to these actions; and the disciplinary bar imposed upon her retirement were all materially adverse actions.  Section 623(d)'s requirement of a materially adverse action is less stringent than § 623(a)'s requirement of an adverse employment action.  All adverse employment actions are materially adverse, *see Galabya*, 202 F.3d at 640 (defining adverse employment action as "a materially adverse change in the terms and conditions of employment" (quotation omitted)), but not all materially adverse actions are adverse employment actions.  *See*

*Evarts v. S. New England Telephone Co.*, No. 00CV1124 WIG, 2006 WL 2864716, at *10 (D. Conn. Oct. 2, 2006) (noting that reprimands not actionable as discrimination may be actionable as retaliation). As a reasonable jury could find that these actions met the higher standard of being adverse employment actions, it follows that a reasonable jury could find that any or all of these actions met the lower standard of being materially adverse.

The causal connection between a plaintiff's protected activity and the materially adverse action can be proved through direct evidence of "retaliatory animus" or through circumstantial evidence. *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). Here Meder alleges that Schuckman mentioned her lawsuit in a meeting discussing her transfer from the AIS class to substitute duty. If a jury believes her, it could find that statement to be direct proof of retaliatory animus. Meder Decl. ¶ 25.

Additionally, Meder might prove retaliatory animus circumstantially, relying on the temporal proximity between her protected activity and the materially adverse action. If temporal proximity is the only basis for drawing an inference of causation, there is authority for the proposition that there must not be more than a two-month delay between the activity and the retaliation. *See, e.g.*, *Garrett v. Garden City Hotel, Inc.*, No. 05-CV-962 (JFB)(AKT), 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) ("[D]istrict courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." (collecting cases)). Here, *Meder I* was filed two and one-half years before Meder even began working at P.S. 79, which is too great a lapse of time to support an inference of causation by itself. But *Meder II* has a closer temporal proximity to the adverse actions Meder complains of. Meder filed a complaint with the

EEOC on January 30, 2004; received a "right to sue" letter on September 21, 2004, Declaration of Jonathan Bardavid, Exhibits CC & DD, *Meder II*, 05 CV 919 (JG), 2007 WL 1231626; and filed her lawsuit on February 15, 2005. Thus, Meder's pending complaint with the EEOC overlapped with the beginning of her troubles at P.S. 79, and her filing of the complaint in this court occurred shortly before many of the allegedly fabricated third-party complaints against her, and within two months of her transfer to the AIS class.

In addition to this temporal proximity, Meder presents other circumstantial evidence of a causal connection between the adverse actions and Meder's protected activity. As noted above, a reasonable jury could find that Lardizzone and Schuckman were fabricating at least some elements of Meder's disciplinary record, and could infer from this finding that they were doing so because they knew of her history of litigation and wished to create a record that would shield their actions against her from liability.

In sum, a reasonable jury could infer a causal connection between Meder's protected activity and materially adverse actions taken against her.

As discussed in connection with Meder's claim of age discrimination, the defendants have met their burden of producing evidence of a legitimate and nonretaliatory reason for the actions taken toward Meder. However, as discussed above, a reasonable jury could find that Lardizzone and Shuckman fabricated elements of Meder's disciplinary record, and could infer from this that they did so to mask a retaliatory motive. Therefore, defendants are not entitled to summary judgment on Meder's claim of retaliation under the ADEA and NYSHRL.

E.       *New York City as Defendant*

The City of New York is not a proper defendant in this case, as the DOE is "an entity separate from the City itself," *Linder v. City of N.Y.*, 263 F. Supp. 2d 585, 590 (E.D.N.Y. 2003), and is the proper defendant for lawsuits involving employees of the department.  *See also Gonzales v. Esparza*, No. 02 Civ. 4175 (SWK), 2003 WL 21834970, at *2 (S.D.N.Y. Aug. 6, 2003) ("[T]he Board continues 'for all purposes, [to] be the government or public employer of all persons appointed or assigned by the city board or the community districts[.]'" (quoting N.Y. Educ. Law. § 2590-g(2))).  Accordingly, the plaintiff's claims against the City of New York are dismissed.

## CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment on Meder's claims of age discrimination and retaliation under the New York Human Rights Law and ADEA is denied, except with respect to claims of age discrimination based on a hostile working environment, which are dismissed.  All claims against the City of New York are dismissed.  The final pretrial conference will be held on November 16, 2007 at 11:00 AM.  Jury selection and trial will take place on November 26, 2007 at 9:30 AM.


So ordered



John Gleeson, U.S.D.J.

Dated:       Brooklyn, New York
             October 9, 2007